393 So.2d 919 (1981)
Clyde WEBER
v.
CRESCENT FORD TRUCK SALES, INC.
No. 11560.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1981.
Rehearing Denied February 24, 1981.
*920 Alonzo T. Stanga, III, Metairie, for plaintiff-appellee.
Phelps, Dunbar, Marks, Claverie & Sims, Rutledge C. Clement, Jr., New Orleans, for defendant-appellant.
Before CHEHARDY, GARRISON and STOULIG, JJ.
EDWARD J. STOULIG, Judge, pro tem.
Defendant, Crescent Ford Truck Service, Inc., (Crescent) suspensively appeals from a judgment condemning it to pay $6,658.00 to plaintiff, Clyde Weber, as a result of a redhibitory action arising out of the sale of a dump truck.
Plaintiff purchased a two year old, used Ford diesel dump truck from defendant on February 4, 1975 for $16,200.00. A down payment of $4,000.00 ($1,200.00 cash, and $2,800.00 trade-in) was made and the remaining sum of $12,200.00 owed on the purchase price and other allied charges were financed through Ford Motor Credit Company payable in thirty-six monthly installments of $507.40.
In addition to initial minor adjustments, the truck was returned to defendant's service department on March 25, 1975 and April 7, 1975 for significant repairs in order *921 to eliminate the excessive exhaust smoke caused by the burning of oil. During June, 1975 it became apparent to the parties that the truck's engine would have to be replaced. Plaintiff left the truck at defendant's place of business and never sought its return. On November 19, 1975 plaintiff executed a "Voluntary Surrender and Release" in favor of the Ford Motor Credit Company in satisfaction of the outstanding balance due on the purchase price of $15,217.00. After replacing the motor and other repairs, defendant subsequently sold the truck to Barnabee Martin on February 27, 1976.
The trial judge concluded that Crescent had knowledge of the existence of the defects at the time of the sale and though the evidence was not sufficient to support a recission of the sale, it did justify a reduction in the purchase price in the amount of $6,658.00 consisting of $618.00 reimbursement of expenditure for repairs, $5,040.00 representing damages for "down-time", and $1,000.00 attorney's fees. Defendant's exceptions of no cause or no right of action were dismissed.
Defendant appealed raising the following issues for our determination: Whether the evidence supported the finding that the defects in the truck did exist at the time of the sale and that Crescent had knowledge of this fact. Defendant asserts that even if we affirm the trial judge's findings with regard to liability, we must allow it credit under C.C. Art. 2531 for plaintiff's use of the truck during his five months possession. Defendant further contends that the trial court's award of damages based on "downtime" is manifestly incorrect and the granting of attorney's fees constitutes an error of law.
The lengthy and complicated trial produced an abundance of conflicting testimony between the experts. Plaintiff and his brother, James Weber, the operator of the truck, testified that when they test drove the truck they noticed a large amount of blue smoke emitting from the exhaust. They both stated they questioned the salesman, Guy Battaglia, on the smoke and he assured them that this was normal for diesel engines. Mr. Battaglia denied any recollection of smoke coming from the exhaust or any questions in that regard, however, he did recall something about an "oil leak in the front and a couple of lights were out", which problems, he thought, were adjusted before delivery the following day.
The Webers testified that there were problems with the lights, shift, wheels and the engine running hot immediately after the sale. On March 25, 1975 the truck was delivered to Crescent for repairs including replacement of the number one piston. Approximately two weeks later, on April 7, 1975 the remaining seven pistons and all rods, bearings and rings were replaced and the cylinder heads rebuilt. James Weber went to pick the truck up after this major overhaul but shortly after departing defendant's premises the fan broke off into the radiator, tearing it up and requiring replacement of the radiator.
Clyde Weber was charged $618.00 equaling 50% of the cost for the March 25 and April 7 repairs based on an alleged warranty which provided that the buyer and dealer would split the cost of repairs during the first 30 days. The warranty agreement was honored even though the repairs were made after the 30 day time period had expired. No charge was made for replacement of the radiator.
Both sides agree that the fault in the engine was caused by "blow-by" or excessive pressure in the crank case which pushed the oil out through the seals. Defendant produced an oil sample analysis expert to buttress his argument that James Weber's improper maintenance of the air filter system caused the "blow-by". Counsel for plaintiff produced an expert in the field of diesel mechanics who testified that the blue smoke and the bad oil seal existing at the time of the sale evidenced excessive blow-by, constituting a defect in the truck.
Great weight must be given to the trial judge's finding that the defect existed at the time of the sale and a reduction in the purchase price is warranted. We fail to find any showing that the trial judge was *922 clearly wrong or manifestly in error in his evaluation of two days of testimony from nine witnesses. In his Reasons for Judgment he states:
The Court finds that the initial problems with the truck were the responsibility of defendant, Crescent Ford, but that after the initial repairs were made, plaintiff failed to properly maintain the vehicle thus causing the ultimate problems of dirt in the engine and the ultimate failure of the engine.
* * * * * *
The Court concludes that the evidence was not sufficient to support a recission of the sale; however, the Court does find that the evidence was sufficient to maintain a judgment in quanti minoris for reduction of the price and damages. In determining the amount of the reduction, the Court considers not only the cost of the initial repairs but also the numerous problems, the frequent inconvenience associated with the mechanical problems along with the initial overall poor performance of the truck in relation to that expected.
* * * * * *
... Since the defects did appear within three (3) days after the sale there is a presumption according to Louisiana Civil Code Article 2530 that the defects existed at the time of the sale. Hence, the Court finds that the defendants had knowledge, either actual or constructive, of the existence of the defects at the time of the sale.
Therefore, under Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) absent manifest error we affirm the trial court's judgment on the issue of liability.
We now turn to a consideration of the damages awarded to plaintiff. During the course of the trial both plaintiff and defendant made references to an agreement where the cost of all repairs made within thirty days of the sale would be borne equally by the parties. We are not favored with a copy of said agreement, and, therefore, are unable to ascertain its import or significance. However, it is undisputed that plaintiff did contribute $618.00 as his 50% pro-rata of the costs of repairs made on March 25 and April 7. There remains only the issue of whether these charges are recoverable in a redhibitory proceeding in view of the agreement between the parties.
Under LSA-C.C. Art. 2531[1] the "good faith" seller is bound to repair, remedy, or correct the vices in the thing sold, and failing to do so, the purchaser must be reimbursed the purchase price and all reasonable related expenses. It must be concluded from the tenor of this article that all costs of repairs to correct the defect in the thing sold must be borne by the seller. The trial court found that the defendant fulfilled its obligation to repair in March and April, 1975: however, in requiring the plaintiff to pay 50% of the cost of these repairs the defendant was in violation of C.C. Art. 2531.[2]
The terms of the purported agreement obligating the plaintiff to pay 50% of the costs of repairs contravenes the express provisions of Article 2531 and the warranties implied in other codal articles governing redhibition. Being in derogation of these laws, any waiver of rights or benefits flowing from the implied warranty against hidden defects and their remedial costs must be clear, unambiguous, and unequivocal. To be effective the waiver must either refer to the specific codal article or so tract the language of its provisions as to leave no *923 doubt that statutory benefits are being waived. Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973); Dunlop v. Chrysler Motors Corp., 299 So.2d 495 (La. App. 4th Cir. 1974); Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La. App. 4th Cir. 1968); and Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La. App. 4th Cir. 1962).
Because the defendant seeks to avoid reimbursing plaintiff the $618.00 he paid towards the repairs, it bears the burden of establishing the terms and conditions of the agreement by the introduction of the document into evidence, thereby affording this court the opportunity to ascertain if it complies with the jurisprudential standards set forth in the above cited cases. Having failed to do so, the court must resolve the effect of the purported agreement against the defendant.
Based upon our finding that the trial judge was correct in holding that Crescent knew of the defect at the time of the sale, it necessarily follows that the alleged agreement between these parties does not relieve the defendant of the obligation to reimburse the plaintiff for the admitted sum he contributed towards the seller's statutory obligation to bear all expenses in remedying the defects. We affirm the award.
Defendant contends that the award of $5,040.00 for "down-time" is erroneous. Apparently the amount was reached by multiplying $252.00 times 20 days. The trial judge used these figures based on the testimony of James Weber, plaintiff's brother and exclusive driver of the truck, that it was inoperable for four weeks and on defendant's exhibit D-17, which indicated that plaintiff could earn as much as $252.00 per day.
Defendant submits the judge's estimate is based on James Weber's testimony that 20 working days were lost due to down-time for repairs. The objection is based on the fact that Weber testified even when he had possession of the truck it could only be used two or three days each week due to bad weather during the winter months. Furthermore, the judge incorrectly relied on exhibit D-17 to arrive at $252.00 per day earning figure, when, according to the truck driver, $165.00 represented a good day's earnings during the time he operated the truck.
We agree with the defendant's position regarding the amount of daily revenues from the trucking operation. The $250.00 per day gross return is a general guess-estimate based upon plaintiff's brother-driver's testimony that 36 loads per day at.$7.00 per load could be hauled. No distance or other factors involved in the hauling of sand were ever established in arriving at this daily figure. Such a broad generalization devoid of specifics can not prevail over the same witness's direct and positive testimony that $165.00 per day would represent an average good day's earnings with the truck. This latter figure should have been used in arriving at the daily loss of revenue.
The testimony does support the use of a twenty day working figure. Although James Weber testified that during the winter months the truck was used less frequently, he stated on cross-examination that the truck was used for, basically, a five day week. Also, though the first two months of Weber's possession were winter months, the latter three were in the spring season with better weather and more workdays per week.
The award for down-time is reduced to $3,300.00 ($165.00 × 20 days) and the judgment of the trial court is adjusted accordingly.
Appellant claims it is entitled, under C.C. Art. 2531, to a credit for the use of the truck by plaintiff during the five month period from the date of the sale to return of the truck the following June.
A reading of C.C. Art. 2531 does not support appellant's position. The first paragraph of this article treats of two situations. It grants the "good faith" seller the right to repair or remedy the vice in the thing sold and thereby fulfill its obligation as a vendor. This article further provides if *924 the seller is unable or fails to remedy the defect, the entire transaction then is vulnerable to an action in redhibition and the seller must return the purchase price, the reasonable expenses of the sale, and the cost for the preservation of the thing. Only in the latter instance, where rescission is decreed is the defendant entitled to a credit for the value of any fruits or use the purchaser enjoyed.
Credit for use is allowed only in rescission because the object of redhibition is to restore the parties to the situation as it existed before the sale. It would be inequitable to require the seller to make the buyer whole by returning the purchase price, and other related reasonable expenses of the sale and preservation and at the same time permit him to retain the benefits of the fruits and use of the thing sold during the period of his possession. In order for the seller to be made whole it is essential that he receive credit for such fruits and use.
However, where quanti minoris is decreed the seller is not entitled to a credit for use because the buyer retains the thing sold and, as the owner, is entitled to its fruits and use. The object of quanti minoris is to compensate the buyer for any uncorrected vices and defects by a comparable reduction in the purchase price.
We affirmed the trial court's judgment decreeing quanti minoris and, therefore, conclude that defendant is not entitled to any credit for plaintiff's use of the truck.
The cases cited by defendant in support of its right to a credit can be distinguished in that every one involves a rescission of the sale and such a credit is not applicable to a reduction in price as granted in this case.[3]
In passing we note the written "Voluntary Surrender and Release" executed by the plaintiff in favor of Ford Motor Credit Company on November 19, 1975 provides in part:
"... you are hereby authorized to retain all payments heretofore made by the undersigned as compensation for the use of commodity by the undersigned in connection with the said transaction ...". (Underscoring added.)
Apparently the defendant later acquired the truck from Ford Motor Credit Company and in turn sold it to Barnabee Martin on February 27, 1976.
Finally defendant questions the propriety of the trial court's award of $1,000.00 attorney's fees arguing that appellant was a seller in good faith, i. e., "knew not the vice of the thing sold" at the time of the sale and therefore the provisions of C.C. Article 2545 authorizing the granting of attorney's fees are not applicable.
This contention is in direct contradiction of the trial court's findingwith which finding we agree"... that the defendant had knowledge, either actual or constructive, of the existence of the defects at the time of the sale". It further found that the defects appeared within 3 days of the sale.
Based upon these conclusions of fact, unquestionably C.C. Article 2545 applies and the granting of attorney's fees is proper. No issue of reasonableness of the fee is raised.
Appellee seeks an increase in the award of the attorney's fees based on the additional legal representation necessitated by defendant's appeal. In view of the appellee's failure to appeal from the judgment or answer the appeal we are unable to consider his request for an increase. C.C.P. Art. 2133; Luna v. Atchafalaya Realty, Inc., 325 So.2d 835 (La. App. 1st Cir. 1976); Gour v. Daray Motor Co., Inc., cited supra.
For the foregoing reasons the judgment of the trial court is amended to reduce the award for "down-time" from $5,040.00 to *925 $3,300.00, in all other respects the judgment is affirmed.
AMENDED, AND AS AMENDED AFFIRMED.

ON REQUEST FOR CLARIFICATION AND APPLICATION FOR REHEARING
Appellant filed a request for clarification of the judgment regarding the assessment of the costs of appeal coupled with an application for a rehearing.
The record reflects that the judgment of this court is silent as to the assessment of the costs of this appeal. It also discloses that only the defendant-appellant appealed from the judgment of the district court. Plaintiff-appellee did not appeal or answer the appeal.
On appeal, defendant was successful in having the judgment of the trial court reduced approximately 25%, from $6,658.00 to $4,918.00. In view of the partially successful appeal of defendant, the court is of the opinion that the costs of this appeal should be borne equally by the appellant and the appellee.
Accordingly the judgment of this court dated January 13, 1981 is amended and supplemented to decree: All costs of this appeal are to be borne equally by the appellant and the appellee. In all other respects the judgment is reaffirmed.
The application for a rehearing is denied.
NOTES
[1] Art. 2531. The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
[2] The instant appeal involves a reduction in purchase price and not a redhibition. This difference is of no legal consequence here because C.C. Article 2544 provides an action in quantis minoris is "... subject to the same rules and to the same limitations as the redhibitory action".
[3] Alexander v. Burroughs Corp., 359 So.2d 607 (La. 1978); Financial Services Co. v. Ryan, 382 So.2d 215 (La. App. 3rd Cir. 1980); Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La. App. 3rd Cir. 1979); Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (La. App. 2nd Cir. 1975); and Robertson v. Jimmy Walker Chrysler-Plymouth, 368 So.2d 747 (La. App. 3rd Cir. 1979).