416 So.2d 266 (1982)
Jimmie L. CLOUD, Plaintiff-Appellant,
v.
HUFFMAN MOTOR COMPANY, INC., et al., Defendants-Appellees.
No. 8803.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
Rehearing Denied July 21, 1982.
*267 A. Gaynor Soileau of Pucheu, Soileau & Coreil, Ville Platte, for plaintiff-appellant.
Gachassin & Capretz, Susan Severance, Lafayette, Kennedy & Yeager, Ralph W. Kennedy, Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Alexandria, for defendants-appellees.
Before DOMENGEAUX, CUTRER and SWIFT, JJ.
SWIFT, Judge.
Jimmie L. Cloud filed this suit against Huffman Motor Company (Huffman), Cummins Engine Company (Cummins) and General Motors Corporation (GMC) to rescind the sale by Huffman to the plaintiff of a 1979 GMC tractor truck assembled by GMC with a diesel engine manufactured by Cummins. Subsequently, Huffman filed a third party demand against Cummins and GMC seeking indemnification from the manufacturers in the event of a recovery by Cloud from Huffman. From a judgment dismissing the plaintiff's demands, he has appealed.
*268 On February 28, 1980, the plaintiff purchased a new truck from Huffman for a cash price of $48,153.00. After adding finance and insurance charges the total cost was $72,646.92, less a credit of $18,000.00 for the trade-in of another vehicle. The plaintiff took possession of the truck on that date and began using it in the operation of his business of hauling gravel.
On March 10, 1980, Cloud returned the truck to Huffman complaining that the windshield wipers were not working, the fuel pump was sucking air, the cab was leaking water and the transmission was leaking oil. These items were repaired and the truck was returned to him in two days.
On March 28 the plaintiff again notified Huffman that the cab was leaking and the windshield wipers were not operating properly. The windshield wiper motors as well as a low air pressure switch were replaced on that date.
On April 7 the truck was returned to Huffman. A door was realigned and some resealing work was done around the cab lights and air horn.
Subsequently, the truck began using excessive amounts of oil and the plaintiff informed Huffman of this problem. On June 4 pursuant to an agreement with Huffman, Cloud brought the truck to Cummins Sales and Service in Shreveport, Louisiana, where the motor was overhauled. At that time the vehicle had been driven about 23,800 miles.
The plaintiff testified that on June 20 the fuel pump ceased to work properly and it was "worked on" at a truck center in Port Allen.
On August 28 the fuel pump went out again and the plaintiff brought the vehicle to Huffman to have it repaired. During this visit Mr. Cloud saw Huffman's personnel placing an air filter in a new truck and he learned that truck had been delivered to the dealer without an air filter. That night Cloud checked his truck and discovered its air filter was missing. Huffman installed one the next morning. On that occasion the plaintiff asked Huffman to replace the engine. His request was refused, but eventually Huffman and GMC agreed to overhaul the engine. The truck stayed in the shop three days for this overhaul in September, 1980. The mileage then on the truck was approximately 51,700.
Billy McManus, Huffman's diesel mechanic who performed the second overhaul, testified that the engine showed no signs of excessive wear at that time. However, the pistons, liners, rod bearings, main bearings and three gasket heads were replaced, the turbo charger was overhauled and the engine was cleaned. McManus also checked the air compressor, but found nothing wrong with it.
Just before this overhaul the truck was inspected by Jim Wright, a diesel mechanic for another concern in Alexandria, and photographs were taken. The photographs and Mr. Wright's testimony reveal that the engine and the air intake system were extremely dirty.
Following the September repair of the engine by Huffman the vehicle was returned to the plaintiff who again placed it in service. According to Cloud's testimony, the same problems began to occur shortly thereafter. He said that the engine would smoke, was difficult to start and the vehicle again began experiencing problems with oil and water consumption. The plaintiff also stated that he continued to have problems with the windshield wipers which prevented him from operating the truck during rainy weather.
On October 20, 1980, the plaintiff filed his petition seeking a recision of the sale of the truck. However, he continued to use the vehicle until the middle of January, 1981, when, according to Cloud the engine lost oil pressure to the extent that he considered further operation to be damaging. The plaintiff testified that at this time the vehicle had been driven 88,000 or 89,000 miles. During this 10½ month period Mr. Cloud usually hauled two to three loads of sand or gravel per day, each containing approximately 25 yards.
The plaintiff admitted that he did not change the air filter, as recommended by *269 GMC's maintenance schedule, during the 10½ months that he operated the vehicle. However, such inaction was in reliance on the air filter gauge on the truck's instrument panel and the instruction contained in Cummins' manual not to change the filter until the gauge so indicated. Since the gauge did not show that the filter needed changing, we do not believe that the plaintiff caused the damages which resulted.
Mr. Charles Deville, the plaintiff's brother-in-law, testified that he helped drive the GMC truck for the plaintiff after the second overhaul. He stated that between September and December of 1980 he hauled on the average two or three loads a week. The only problems he experienced with the truck were that the windshield wipers did not work and the steering wheel vibrated. He added that the oil pressure dropped to 45 pounds in December, 1980.
In February, 1981, the plaintiff stopped making payments to the finance company and subsequently the vehicle was seized and sold at public auction. At the time of the trial the truck was in the possession of Huffman. The latter's mechanic testified that after the truck was returned to Huffman its oil pressure was 38 pounds during operation and 20 pounds while idling. He said that the normal oil pressure for such a vehicle during operation was between 40 to 70 pounds and during idle between 15 to 30 pounds. He further testified that the oil in the vehicle was dirty, but after changing the oil and oil filters the oil pressure was again tested and found to be 58 pounds during operation and 25 pounds during idle, well within the normal limits.
In his written reasons for judgment the trial judge said, "the preponderance of the evidence indicates that at the time of delivery, this vehicle did not have the air cleaner in the canister and that this failure was the cause of the mechanical problems of the engine which have been shown." However, the court found that this vehicle did not have a defect which rendered it absolutely useless or its use so inconvenient and imperfect that the buyer would not have purchased it had he known of the missing filter and rendered judgment in favor of the defendants rejecting the plaintiff's demands. Thus, it was unnecessary for the trial court to render judgment on Huffman's third party demand.
The principal issue before this court is whether the district court erred in finding that the truck did not have a redhibitory defect which entitled the plaintiff to a rescission of the sale.
The codal basis for a redhibitory action is LSA-C.C. Art. 2520 which provides:
"Redhibition, definition. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
A redhibitory defect entitling the buyer to rescind the sale is a non-apparent defect existing before the sale in the thing sold which renders it useless or its use so imperfect, that the buyer would not have bought it if he had known of the defect. LSA-C.C. Arts. 2520, 2521, and 2530.
We agree with the trial judge that the preponderance of the evidence is to the effect that at the time of delivery an air cleaner was missing from its canister on the truck and this eventually caused the problems with the engine and air intake system. Employees of Huffman testified that the vehicle was inspected before delivery to the plaintiff and the inspection form revealed that the air cleaner was checked. On the other hand, Mr. Cloud and other witnesses testified that when plaintiff checked the canister on August 28, 1980, there was no air filter therein. In order to remove the air filter from its canister it is necessary to unscrew several bolts with a wrench. The paint at this location indicated the nuts had not been removed from their bolts prior to August 28.
Unquestionably, the operation of the diesel truck without the air filter allowed dirt into the air intake system and engine. And it is clear that the dirt which accumulated *270 therein necessitated the two overhauls and adversely affected the functioning of the vehicle.
Nevertheless, the record reveals that the plaintiff drove the truck 88,000 or 89,000 miles during the 10½ month span. Cloud's records reveal that he operated the truck in his business on 188 days during this period, hauling approximately two or three loads per day. His gross earnings from these hauls was $61,074.11 or $324.87 per day. His gasoline expenses during this period was $15,275.00 or an average of $81.25 per day. Thus, while operating the plaintiff netted approximately $245.00 per day.
The plaintiff testified that he discontinued the operation of the truck because of low oil pressure in January, 1981. Huffman's employees' testified that the reason for the low oil pressure was dirty oil and that after the oil change the oil pressure was in normal limits and the truck was operable. From our review of the evidence we cannot say that the trial court was clearly wrong in finding that the defect (absence of an air filter) did not render the vehicle absolutely useless or so inconvenient that the plaintiff would not have bought the vehicle had he known thereof. Therefore, we must affirm the trial court's denial of the plaintiff's demand for a rescission of the sale.
In every redhibitory action, however, if the evidence establishes only a partial failure of consideration, it is within the discretion of the court to grant the buyer a reduction in the purchase price. LSA-C.C. Arts. 2541 and 2543; LSA-C.C.P. Art. 2164, Savoie v. Don Siebarth Pontiac, Inc., 345 So.2d 210 (La.App. 3 Cir. 1977); and Davis v. Davis, 353 So.2d 1060 (La.App. 2 Cir. 1977), writ denied 355 So.2d 549 (La.1978).
In the present case we find that because of the missing air filter the engine had to be overhauled twice and that other systems operating on air, including the windshield wipers, malfunctioned a number of times and had to be repaired. Under these facts we believe that the plaintiff is entitled to a reduction in the price of the vehicle against GMC and Huffman.[1]
One of the principal factors in making such an award is the cost of repairing the defects. Depending on the circumstances, this may be the only consideration. However, where warranted, the court may also include in the judgment what it believes to be the difference between the actual sales price and the price that a reasonable buyer and seller would have agreed upon had the defect been known to them at the time of the sale. Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4 Cir. 1974), writ refused 303 So.2d 186 (La. 1974).
In this case the evidence reveals that the defendants repaired the vehicle several times at no cost to the plaintiff. The trial judge evidently found that it had been satisfactorily repaired. Otherwise, he would have made some award to the plaintiff. We cannot say that he was clearly wrong in this respect. In view of such finding and the fact that this vehicle was driven some 89,000 miles by the plaintiff before he permitted the finance company to foreclose its mortgage without making any request for further repairs even though the truck was still within its warranty period, we are convinced that the plaintiff's recovery should be limited to the monetary damages actually proved. He, of course, is entitled to recover these in quanti minoris despite his being unable to return the vehicle and restore the parties to their status quo. Lacey v. Baywood Truck & Machinery, 381 So.2d 863 (La.App. 1 Cir. 1980).
The record reflects that the vehicle was in the shop for repairs nine days and also that the plaintiff was unable to use it in his business on ten rainy days because of malfunctioning windshield wipers which resulted from the lack of an air filter. Consequently, *271 we believe that he should be compensated for his loss of income during these 19 days of "down time." Weber v. Crescent Ford Truck Sales, Inc., 393 So.2d 919 (La. App. 4 Cir. 1981), writ denied 400 So.2d 667 (La.1981). We will therefore award the plaintiff $245 per day for 19 days or a total of $4,655. No other damages were established.
We also find that the plaintiff is entitled to an award for his attorney's fees. LSA-C.C. Art. 2545 states:
"Liability of seller for concealment of vice. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages."
Under this article a "seller who knows of defects, or who, with reasonable inspection can find obvious or apparent defects, in the product he sells, stands in a similar position as the manufacturer of the product." Harris v. Bardwell, 373 So.2d 777, 780 (La.App. 2 Cir. 1979). If the buyer proves actual or constructive knowledge of the defect by the seller, the latter is liable for reasonable attorney's fees. Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1 Cir. 1975).
In the instant case the evidence reveals that Huffman was required to make a "Pre-delivery Inspection" of the vehicle which included a check of the air filter. Not having found through such inspection that the vehicle lacked an air filter, the seller had constructive knowledge of the defect before the sale. Therefore, both the manufacturer, GMC, and the seller, Huffman, are liable in solido for the buyer's attorney's fee which we will fix at $3,500.
Turning now to Huffman's third party demand against GMC for indemnification, the latter argues that because Huffman has not taken an appeal from the judgment (which did not mention such demand) it is now final. We disagree, but believe it is necessary to remand the case to the trial court for the disposition of that incidental demand.
In Chatelain v. Payzant, 382 So.2d 941 (La.1980), our supreme court was confronted with an analogous situation and ruled:
"It has been held that a judgment for plaintiff by implication rejects a reconventional demand on the part of defendant. Rester v. Davidson, 29 So.2d 527 (La.App. 1 Cir. 1947). However, where, as here, there is a judgment in favor of defendant, there is no implied rejection of defendant's reconventional demand.
"In Walker v. Jones, 257 La. 404, 242 So.2d 559 (1970) it was held that the trial court was not divested of jurisdiction over a third party action when that action had not been adjudicated and was not reviewable on appeal.
"At the time this judgment was signed, the trial court could not have decided the reconventional demand because it only asked indemnification or contribution, if Cora Payzant was cast in judgment. The judgment was in her favor and it was unnecessary to decide the reconventional demand. When the Court of Appeal reversed the trial court judgment in part, the trial court retained jurisdiction over the reconventional demand. It was unnecessary for defendant Payzant to appeal or answer the appeal because the reconventional demand had never been decided. Therefore, the matter will be remanded to the trial court for judgment on Cora Payzant's reconventional demand for contribution against Clayton and Jo Ann Chatelain." [Emphasis added.]
In the present case the trial court could not have decided the third party demand by Huffman because it only asked for indemnification if Huffman was held liable for damages caused by the defect, and the latter was exonerated. According to Walker v. Jones, supra, in such case the trial court retained jurisdiction over the third party demand and the matter is not reviewable by this court. Therefore, a remand is necessary for the determination of such demand.
Bond v. Commercial Union Assur. Companies, 387 So.2d 617 (La.App. 3 Cir. 1980), affirmed in part, reversed in part and remanded, *272 407 So.2d 401 (La.1981), involved a somewhat similar situation and this court went ahead and ruled on the third party demands under LSA-C.C.P. Article 2164. However, the distinction between the two cases is that in Bond the trial court's judgment expressly dismissed the incidental demands. In this case the judgment is silent in that respect.
For the foregoing reasons, the judgment of the district court is affirmed insofar as it dismissed the plaintiffs demands against Cummins. Otherwise it is reversed and judgment is hereby rendered on the main demand in favor of the plaintiff against GMC and Huffman, in solido, in the principal sum of $4655.00 and $3500.00 as an attorney's fee, together with legal interest from judicial demand until paid. The case is remanded to the district court for the disposition of Huffman's third party demand against GMC. Taxation of court costs will await final determination of the suit.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART AND REMANDED.
NOTES
[1] The evidence is uncontradicted that Cummins was not responsible for providing the air filter. It was merely the manfacturer of the engine and there is no evidence in the record to suggest a defect in the engine. Therefore, Cummins is not liable for the damages caused by the missing filter.