STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-280


BRUCE A. BAKER

VERSUS

MAZDA MOTOR OF AMERICA, ET AL.


**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 204,256
HONORABLE HARRY FRED RANDOW, DISTRICT COURT JUDGE


**********
**ULYSSES GENE THIBODEAUX**
**JUDGE**
**********


Court composed of Ulysses Gene Thibodeaux, Sylvia R. Cooks, and Billy Howard Ezell, Judges.


                                    **AFFIRMED.**


**Fred Andrew Pharis**
**PHARIS & PHARIS**
**831 DeSoto Street**
**Alexandria, LA 71301**
**Telephone:  (318) 445-8266**
**COUNSEL FOR:**
        **Plaintiff/Appellee - Bruce A. Baker**

**David A. Hughes**
**Hughes & LaFleur**
**P. O. Box 1831**
**Alexandria, LA 71309-1831**
**Telephone:  (318) 443-4090**
**COUNSEL FOR:**
        **Defendant/Appellee - State Farm Mutual Auto Ins. Co.**

**Stephen Craig Carleton**
**Simoneaux, Carleton, Etc., LLC**
**2431 S. Acadian Thruway #600**
**Baton Rouge, LA 70808-0000**
**Telephone: (225) 928-6880**
**COUNSEL FOR:**
> **Defendant/Appellant - Mazda Motor of America and Hixon Autoplex**

THIBODEAUX, Judge.

In this automobile redhibition case, the defendants, Mazda Motor Company of America, Inc., (Mazda) and Hixson Autoplex of Alexandria, Inc., (Hixson) appeal the judgment of the trial court awarding the plaintiff, Bruce Baker (Mr. Baker), $6,000.00, representing a reduction in the purchase price of the vehicle. Mr. Baker filed an answer to the defendants' appeal contesting the trial court's failure to award attorney fees for the post-trial work done by his counsel in this matter and on appeal. For the following reasons, we affirm the trial court's judgment regarding the reduction in the purchase price of Mr. Baker's vehicle. Further, we award the amount of $2,500.00 for plaintiff's counsel's work done on appeal.

## I.

### ISSUES

We shall consider: (1) whether Mr. Baker carried his burden of proving that a vice or defect existed at the time the vehicle was manufactured and (2) whether the trial court erred in admitting the testimony of Mr. Baker's witness, Steve Dauzat, the owner of Auto-Tech, a vehicular parts and service shop, as an expert in auto mechanics and basing its decision thereon.

## II.

### FACTS

Mr. Baker purchased a 1999 Mazda 626 passenger vehicle from Hixson on April 17, 1999. The car came with a three year/fifty thousand mile warranty. Susan Baker, Mr. Baker's wife, testified that the couple's practice was to keep a

purchased vehicle for a couple of years after it was paid off. Later, the couple would trade in the old car for a new one.

By January 2001, the Mazda had been driven sixty-one thousand miles. Mrs. Baker testified that it was in January 2001 that the car first experienced trouble. While driving to an appointment, the car began sputtering, and smoke came out of the back. Mrs. Baker drove the car home. She explained that in her job as an insurance salesperson for various insurance companies, she used the car to drive all over Louisiana and parts of Texas; thus, the reason for the high mileage. The Bakers testified that they changed regularly the proper oil and filter as well as regularly checked other fluids and the tires on the car. Mrs. Baker recalled driving the car in the rain but denied that the car had ever been submerged in water.

The Bakers took the car to Hixson, the dealership from where they bought the car, to have it examined. The service manager told Mrs. Baker that the car had been water-damaged. Mrs. Baker expressed surprise at that diagnosis since none of her other cars ever had water damage, and because she had driven in Louisiana rain for thirty years. Mr. Baker testified that he was told a rod had been bent that would cost $5,700.00 to fix because they would have to put in a new engine. He was not told about any water getting in the engine. Mr. Baker did not want to put a new engine in the car. Hixson told him that they did not rebuild engines and would only put in a new engine. Mr. Baker thought that it was best to take the car to a place that could rebuild the engine in the car or put in a used engine at a much lower cost.

When his wife informed him that the service manager at Hixson concluded that water caused the engine problems, Mr. Baker called his insurance company. The service manager had advised Mr. Baker that the insurance company should pay to fix a water-damaged engine. By January 22, 2001, the car had been

2

examined by State Farm, the Bakers' insurance company. Mr. Baker was told that the engine had not suffered water damage. After paying for the diagnostics done at Hixson, the Bakers had their car taken to Auto-Tech, an automobile repair shop. State Farm agreed to look at the engine again for evidence of water damage after it was taken apart at Auto-Tech. Again, State Farm's investigator did not find any evidence of water damage, nor did the investigator see a bent rod. Ultimately, State Farm denied payment of the Bakers' claim.

The Bakers' only options were to install a new engine or a rebuilt used engine. Due to the expense, they opted not to use a new engine. Mr. Dauzat of Auto-Tech was able to find a used engine with low mileage for $3,000.00. Even after the engine was replaced, the Bakers continued to experience problems with the car, most notably, the fuel pump. Mr. Baker testified that he replaced the fuel pump several times. With the exception of one week in March 2001, the Bakers did not have the use of their car from January 15, 2001 through March 5, 2001. When the Bakers' car was returned, they still experienced problems.

The Bakers had problems with the "check engine" light coming on. Thus, they returned the car to Hixson so that a diagnostic test could be run on the car to determine the reason the "check engine" light stayed on. The Hixson mechanics replaced an oxygen sensor in the engine which caused the "check engine" light to go out. Mr. Baker was also told that the torque converter of the transmission needed to be replaced. At that point, Mr. Baker decided that it was not worth the expense to fix the transmission. Mr. Baker decided to get rid of the car. When the Bakers traded in the Mazda 626 for another vehicle, the trade-in value was less because of the problems with the car.

State Farm denied the Mr. Baker's claim and neither Hixson nor Mazda accepted responsibility for the problems the Bakers had with the car. Thus, Mr. Baker filed the present redhibition action seeking a reduction in the purchase price of the car. The trial court found in favor of Mr. Baker and awarded a reduction in the purchase price in the amount of $6,000.00 and attorney fees in the amount of $7,500.00. Thereafter, the defendants, Mazda Motor of America, Inc. and Hixson filed the present appeal.

III.

## LAW AND DISCUSSION

### *Standard of Review*

The determinative issue on appeal concerns the factual findings of the trial court. The jurisprudence in this area is well-settled. The standard of appellate review was set forth by the Supreme Court in *Rosell v. ESCO*, 549 So.2d 840 (La.1989) and in *Lewis v. State Through DOTD*, 94-2370, pp. 4-5 (La. 4/21/95), 654 So.2d 311, 314 (La.1995). That standard is manifest error.

### *Redhibition*

Redhibition is defined in La.Civ.Code art. 2520:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such

4

a defect limits the right of a buyer to a reduction of the price.

An action in redhibition lies only if the defect existed at the time of delivery. La.Civ.Code art. 2530. In this case, the trial court also relied on La.Civ.Code art. 2545 in assessing damages, which governs the liability of sellers who know of a redhibitory defect in a thing sold. Louisiana Civil Code Article 2545 states:

> A seller who knows that the thing he sell has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use of fruits.
>
> A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

Further, a buyer may limit his demand to the reduction of the price, as the Bakers have done in the present case, pursuant to La.Civ.Code art. 2541, and is the only recourse if the buyer no longer owns the vehicle. *Cloud v. Huffman Motor Co., Inc.*, 416 So.2d 266 (La.App. 3 Cir. 1982).

The term "defect" as contemplated by La.Civ.Code art. 2520 in a redhibitory action was discussed by this court in *Harper v. Coleman Chrysler-Plymouth-Dodge, Inc.,* 510 So.2d 1366, 1369 (La.App. 3 Cir.1987):

> [Defect] means a physical imperfection or deformity; or a lacking of necessary components or level of quality. *Ezell v. General Motors Corporation,* 446 So.2d 954 (La.App. 3rd Cir.1984), *writ denied,* 449 So.2d 1350 (La.1984); *Williams v. Louisiana Machinery Company, Inc.,* 387 So.2d 8 (La.App. 3rd Cir.1980). The defectiveness of the thing sold is a factual determination by

5

the trier of fact, whose factual conclusions will not be disturbed on appeal absent manifest error. *Orcinus v. Dominum*, 365 So.2d 1330 (La.1978).

The Louisiana Supreme Court discussed the burden of proof in a redhibition action in *Rey v. Cuccia,* 298 So.2d 840, 843 (La.1974) as follows:

> The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale. (Citations omitted). As stated in *Jordan v. Travelers Insurance Co.*, . . . 245 So.2d 151, 155 ". . . proof by direct or circumstantial evidence is sufficient to constitute a preponderance when taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probably than not."

The plaintiffs in a redhibition action are not required to negate all other causes of a defect. *Ewing and Salter, Inc. v. Gafner Automotive & Mach, Inc.*, 392 So.2d 762 (La.App. 3 Cir. 1980), *writ denied,* 396 So.2d 933 (La.1981).

The defendants contend that Mr. Baker did not prove that a defect existed in the car at the time of its manufacture. They argue that the problems experienced by the Bakers with the 1999 Mazda 626 occurred because of Mr. Baker's and his wife's excessive use of the car and their failure to conduct the proper maintenance on the vehicle as well as water intrusion in the engine. Mr. Baker asserts that although they used the vehicle extensively, they followed the proper maintenance schedule as determined by the owner's manual.

Mr. Baker denied that the car had been driven through high water during the two years following the purchase of the car. He also denied that the car had been submerged. The State Farm investigators examined the car after the engine was taken apart at Auto-Tech. Its property damage adjusters opined in their testimony that the engine problems were not caused by water intrusion. Craig Jones, one of the State farm adjusters, testified that Hixson did not tell him about any sand or debris in the

6

engine's air filter, although at trial the Hixson mechanics testified that there was sand and leaves in the air cleaner. A Hixson mechanic also testified that the actual cause of the engine failure was not known. Craig Jones, who examined the car for State Farm, noted that the oil looked like it had not been changed. However, Mr. Jones admitted that he was not a mechanic and that the dark color of the oil could have been caused by the heat. Mr. Baker testified that no one at Hixson told him his engine problems were caused by a lack of maintenance. Richie Quinn, Hixson's service manager at the time of trial but not at the time the Bakers experienced engine problems, testified in his deposition that he would not expect a car engine to fail at 61,000 miles. He further testified that any costs to repair the vehicle would have to be borne by the Bakers.

In the final analysis, neither the Auto-Tech mechanics nor the State Farm investigators, the only people to examine the engine after it had been taken apart, could find any evidence of water intrusion into the engine of the Bakers' 1999 Mazda 626. The trial court heard evidence that the Bakers perhaps did not conduct the proper maintenance on the vehicle. However, this was never a reason given to the Bakers at the time they reported engine problems. Mr. Baker testified that he had the oil and filter changed on a regular basis. Further, prior to the engine failure in January 2001, the Bakers reported to Hixson that the "check engine light" was on. The service report of that day indicated that Hixson merely screwed the car's gas cap on tighter which seemed to make the light go off.

> It has been recognized for a number of years:
>
> > It is not incumbent upon the buyer to seek out, allege, and prove the particular and underlying cause of the defect which makes the thing sold unfit for the purpose intended, particularly when the thing is a complicated piece of machinery; but it suffices if he alleges and afterwards proves as a fact that such defects exist.

*Crawford v. Abbot Automobile Co.,* 154 La. 59, 101 So. 871 (1924).

In this case, there is proof that there was a defect in the manufacture of the car's engine and the components thereof. The evidence supports that there was no fault in the maintenance of the car's engine. By testimony of the car dealership's service manager, this engine should have lasted longer than 61,000 miles although it was no longer under warranty. The trial court found the plaintiff proved that the failure of the engine was due to mechanical problems which, in the absence of proof by the defendants of other causes, was more properly attributed to faulty manufacture. We are satisfied from the facts in this record that Mr. Baker has discharged his burden of proving by circumstantial evidence, and logical inferences, that a defect existed in the manufacture of the engine at the time the car was sold. Thus, we find no error in the trial court's determination of fact that a redhibitory defect existed in the vehicle, such that Mr. Baker is entitled to a reduction in the purchase price.

### *Admission of Expert Witness Testimony*

The defendants assert that the trial court erred in allowing Dauzat of Auto-Tech to testify as an expert in auto mechanics. They argue that Dauzat merely owned and operated a parts and service shop and had not worked as a mechanic in over twenty-three years. Further, the defendants argue that Dauzat had no training or education with respect to servicing foreign cars and more specifically, Mazda vehicles. Mr. Baker argues that prior to becoming a parts and service shop owner, Dauzat worked as a line mechanic and service advisor for a Chevrolet dealership. His work included major engine rebuilding and replacement. Dauzat also worked at two Oldsmobile dealerships as service advisor. Part of Dauzat's job as a service advisor was to oversee the mechanics working on the vehicles and to help diagnose problems. In his present position as owner of Auto-Tech, he supervises ASE-certified mechanics

and has been doing this type of work for sixteen years. His job is to diagnose vehicle problems and conduct major engine repairs.

The requirements of expert testimony are set forth in La.Code Evid. art. 702, which states: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In *Mistich v. Volkswagen of Germany, Inc.*, 95-0939, p. 8 (La. ½9/96), 666 So.2d 1073, 1079, the supreme court noted, "[f]ormal education or training in a particular field is not always necessary to qualify as an expert in a particular field. Experience alone is sufficient." On appeal, a trial court's acceptance of a witness as an expert will not be disturbed, unless it is clearly erroneous. *Id.* Although Dauzat does not have specific training to work on Mazda vehicles, he has worked on foreign vehicles and Mazda vehicles. Considering Dauzat's extensive experience and training, we find no error with the trial court's acceptance of him as an expert.

### *Attorney Fees*

Mr. Baker answered the appeal of defendants and requested attorney fees for work done defending this appeal. In *Johnson v. Louisiana Container Co.,* 02-382, pp. 24-25 (La.App. 3 Cir. 10/2/02), 834 So.2d 1052, 1067, *writ denied,* 02-3099 (La. 5/9/03), 843 So.2d 394 we quoted our decision in *Singal v. Able Glass Co., Inc.*, 95-10, p. 5 (La.App. 3 Cir. 10/11/95), 663 So.2d 393, 396, with respect to awards of attorney fees:

> An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase. *Pitcher v. Hydro-Kem Services, Inc.*, 551

So.2d 736 (La.App. 1 Cir.), *writ denied*, 553 So.2d 466 (La.1989).

In the present case, a review of the additional work necessitated by this appeal reveals that an award of $2,500.00 in attorney fees is warranted. *See Poirrier v. Otis Engineering Corp.*, 602 So.2d 207 (La.App. 3 Cir.1992).

IV.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court if affirmed. We additionally award plaintiff, Bruce Baker, $2,500.00 in attorney fees for all work performed on appeal. Costs of this appeal are assessed against Mazda Motor Company of America, Inc. and Hixson Autoplex of Alexandria, Inc.

**AFFIRMED**.